IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STERN FAMILY REAL ESTATE PARTNERSHIP, </br></br>Plaintiff, </br></br>v. </br></br>PHARMACISTS MUTUAL INSURANCE COMPANY, an Iowa Corporation, </br></br>Defendant. | Civil Action No. 06-130 </br>ELECTRONICALLY FILED </br></br>Judge David Stewart Cercone </br>Magistrate Judge Lisa Pupo Lenihan </br></br>Doc. No. 11 |

## OPINION

CERCONE, J.

Currently before the Court for disposition is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 11) pursuant to Fed.R.Civ.P. 12(b)(6) in this diversity action alleging violations of state common law claims.[1] Plaintiff has alleged claims for negligence and negligent misrepresentation under Pennsylvania common law arising out of the sale and negotiation of property and casualty insurance by Defendant's agent for commercial real estate owned by Plaintiff. Specifically, Plaintiff contends that Defendant's agent was negligent in determining and recommending the amount of insurance coverage for Plaintiff's property, resulting in the property being underinsured. Plaintiff further avers that Defendant's agent negligently misrepresented the appropriate amount of coverage for its building, knowing that Plaintiff would rely on this representation in determining the amount of insurance coverage to purchase for its building, and that such reliance was justifiable. For the reasons set forth below, the Court finds that Plaintiff has alleged sufficient facts to state a claim for negligence and negligent misrepresentation to withstand Defendant's motion to dismiss. Accordingly, Defendant's Motion to Dismiss Plaintiff's Amended Complaint will be denied.

I. **FACTS**

---

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Because this action comes before the Court on a motion to dismiss, the Court must accept as true all of Plaintiff's allegations of fact and must view the facts in the light most favorable to Plaintiff. Located in Mt. Pleasant, Pennsylvania, Plaintiff, the Stern Family Real Estate Partnership ("Stern Partnership"), is a partnership consisting of Jay Stern, Faye Tufano, Robert Stern, and Louis Stern. (Am. Compl. ¶ 5.) The Defendant, Pharmacists Mutual Insurance Company ("Pharmacists Mutual"), is an Iowa corporation engaged in the sale of property insurance. (Am. Compl. ¶ 6.)

The property at issue consists of a three-story building and adjacent parking pad located at 131 West Crawford Street in Connellsville, Pennsylvania ("Property"), which has been owned by the Stern Partnership since approximately 1973.[2] (Am. Compl. ¶ 7-8.) For many years, a pharmacy owned by Burns Drug Company, Inc. and a doctor's office occupied the lower floors of the building comprising the Property; the upper stories of said building contained six apartments and storage. (Am. Compl. ¶ 9.)

On February 20, 2004 and for many years prior, the Stern Partnership insured the Property against loss by fire under policies of insurance issued by Pharmacists Mutual. (Am.Compl. ¶ 10.) The policy in effect as of February 20, 2004, provided coverage on the building in the event of damage or destruction by fire on a replacement cost basis in the amount of $ 1,780,000. (Am. Compl. ¶ 11.) Clifford Lange, an employee and authorized sales representative in Western Pennsylvania of Pharmacist Mutual,[3] met with Louis Stern prior to the renewal of the policy, in or

---

2. According to the Stern Partnership, the building comprising the insured property was originally constructed in the late 1890s of triple brick construction utilizing lumber of a greater width, thickness and quality than is currently used, and 3/4 inch hardwood floors with extensive molding. (Am. Compl. ¶ 8.) The building was extensively renovated in the late 1950s and early 1960s, including a brick addition. (*Id.*)

3. Stern Partnership alleges that Mr. Lange is an insurance producer as that term is defined under 40 P.S. § 310.1. (Am. Compl. ¶ 14.) Under Section 310.1, an "insurance producer" means "[a] person that sells, solicits or negotiates contracts of insurance." Section 310.1 further explains what is meant by the term "negotiate": "To confer directly with or to offer advice directly to a purchaser or prospective purchaser of a particular contract of insurance concerning the substantive benefits, terms or conditions of the contract, provided that the person engaged in that act either sells insurance or obtains insurance from insurers for purchasers."

about August of 2003, to discuss renewal of the insurance and to review the insurance coverage on the Property, during which time Mr. Lange measured the dimensions of the Property and viewed portions of the interior of the building. (Am. Compl. ¶¶ 12-13, 16-17.) At that time, Mr. Lange informed Louis Stern that the property contained approximately 17,800 square feet and recommended that it be insured for $100.00 per square foot. (Am. Compl. ¶ 17.) Based on the measurements and Mr. Lange's recommendation, the Stern Partnership purchased insurance coverage on the building structure in the amount of $ 1,780,000. (Am. Compl. ¶¶ 16-17.) The Stern Partnership alleges that it relied on the advice and expertise of Mr. Lange to determine the amount of insurance coverage which it should purchase on its building so that it could be fully repaired or replaced if damaged or destroyed by fire, and that based on that advice and recommendation, purchased replacement cost insurance coverage in the amount of $ 1,780,000. (Am. Compl. ¶¶ 15, 18.)

On February 20, 2004, the building comprising the Property was severely damaged by fire, for which the Stern Partnership recovered the policy limits of $ 1,780,000 from Pharmacists Mutual. (Am. Compl. ¶¶ 19-20.) However, the estimated cost of rebuilding the structure and replacing the parking pad is $ 3,755,023.04, far more than the amount recovered under the insurance policy. (Am. Compl. ¶ 24.) Consequently, the Stern Partnership had the building and adjacent parking pad razed and the foundation filled in due to safety concerns and because it was not economically feasible for it to rebuild the structure given the disparity between the insurance coverage and estimated cost to rebuild. (Am. Compl. ¶ 23.)

Thereafter, the Stern Partnership instituted the present action on January 31, 2006, to recover the amount of the underinsured/uninsured loss ($ 1,975,023.04) that it contends occurred as a direct and proximate result of the careless and negligent conduct of Mr. Lange, Pharmacists Mutual's authorized agent (Count I).[4] (Am. Compl. ¶¶ 26-27.) The Stern Partnership also asserts a claim for negligent misrepresentation (Count II) against Pharmacists Mutual, seeking the same damages. The motion to dismiss and response thereto have been fully briefed and are ripe for disposition.

---

4. The Stern Partnership also requests interest and court costs as part of its damages.

II.     **STANDARD OF REVIEW – MOTION TO DISMISS**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court is required to accept as true all allegations made in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the plaintiff.[5] *See Blaw Knox Ret. Income Plan v. White Consol. Indus. Inc.*, 998 F.2d 1185, 1188 (3d Cir. 1993); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 871 (3d Cir. 1992). The issue is not whether the plaintiff will ultimately prevail, but rather whether "plaintiff can prove any set of facts consistent with the averments of the complaint which would show the plaintiff is entitled to relief." *See Gaines v. Krawczyk*, 354 F.Supp. 2d 573, 576 (W.D.Pa. 2004) (citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *See Port Auth. of New York and New Jersey v. Arcadian Corp.*, 189 F.3d 305, 311 (3d Cir. 1999) (quoting *Alexander v. Whitman*, 114 F.3d 1392, 1397 (3d Cir. 1997)); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). Thus, under this standard, a complaint will withstand a motion to dismiss if it gives the defendant adequate notice of the essential elements of a cause of action. *Gaines*, 354 F.Supp. 2d at 576 (citing *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996)).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified

---

5. Nonetheless, a court is not required to credit bald assertions or legal conclusions in a complaint when deciding a motion to dismiss. *Gaines v. Krawczyk*, 354 F.Supp. 2d 573, 576 (W.D.Pa. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Consistently, the courts have rejected "'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law' or 'sweeping legal conclusions cast in the form of factual allegations'"[,] in deciding a motion to dismiss pursuant to Rule 12(b)(6). *Id.* (citing *Morse*, 132 F.3d at 906 n. 8 (citing Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1357 (2d ed. 1997)); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. ANALYSIS

#### A. Negligence Claim - Count I

Pharmacists Mutual submits that Plaintiff's negligence claim should be dismissed because the Stern Partnership has failed to allege sufficient facts to establish an essential element of its *prima facie* claim of negligence,[6] *i.e.*, that Pharmacists Mutual owed a duty to its insured to provide ongoing advice regarding the amount of coverage it should purchase absent a special relationship. In support of this argument, Pharmacists Mutual cites *Treski v. Kemper Nat'l Ins. Co.*, 449 Pa.Super. 620, 674 A.2d 1106 (1996),[7] and *Kilmore v. Erie Ins. Co.*, 407 Pa.Super. 245, 595 A.2d 623 (1991),[8] among other authority. Generally, the cases cited by Pharmacists Mutual stand for the proposition that the customer is presumed to know what it needs or wants, and the insurance agent is not under a general duty to advise the insured as to the type or amount of available coverage, or to obtain total/full coverage, or explain the policy and its coverages and/or exclusions, absent a special

---

6. To state a *prima facie* claim of negligence under Pennsylvania law, "the plaintiff must show that the defendant had a duty 'to conform to a certain standard of conduct;' that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000, 1008 (2003) (citing *Morena v. South Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680, 684 n.5 (1983)). The only element being challenged in this motion to dismiss is the first element, the existence of a duty of care owed to Stern Partnership.

7. In *Treski*, the Pennsylvania Superior Court held that insurers had no legal duty to inform Pennsylvanian insureds of the potential effect of the New Jersey deemer statute on their election of the full-tort option under the Pennsylvania automobile insurance policies. 449 Pa.Super. at 635, 674 A.2d at 1114.

8. In *Kilmore*, the Pennsylvania Superior Court held the automobile insurer had no duty to explain to its insured the extent and limits of coverage, and health insurer had no duty to inform insured of policy exclusions and application to automobile accident cases. 407 Pa.Super. 252-53, 595 A.2d at 626-27.

5

relationship. *Accord, Couch on Insurance 3d,* § 46:38 at 46-52 & n. 49 ("*Couch*") (citing *Nelson v. Davidson,* 155 Wis. 2d 674, 456 N.W.2d 343 (1990)) (It is well established that an insurance agent is not under a general duty to advise the insured as to the type or amount of available coverage, or to obtain total/full coverage, or explain the policy and its coverages and/or exclusions, absent a special relationship.) Importantly, these cases all involved situations in which the negligence claim was predicated on the insurance agent's *failure* to advise or recommend coverage.[9]

Stern Partnership counters that based on the five-part test applied by the Pennsylvania Supreme Court in *Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166, 1168-69 (2000), for determining whether a duty of care exists, Pharmacists Mutual's acts of omission, *i.e.,* failure to advise/recommend coverage, create a duty of care owed to Stern Partnership. In *Althaus,* the parents of a child who was misdiagnosed as being sexually abused, were wrongly charged with abuse based on the therapist's misdiagnosis. The parents brought a negligence claim against the therapist, however, the Pennsylvania Supreme Court found that the therapist owed no duty of care to the parents who were not patients. In reaching this conclusion, the Pennsylvania Supreme Court opined:

> Thus, the legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice and society. *See Gardner v. Consolidated Rail Corp.,* 524 Pa. 445, 455, 573 A.2d 1016, 1020 (1990). The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *See generally Dumanski v. City of Erie,* 348 Pa. 505, 507, 34 A.2d 508, 509 (1943)(relationship between the parties), *Forster v. Manchester,* 410 Pa. 192, 197, 189 A.2d 147, 150 (1963)(social utility), *Clewell v. Pummer,* 384 Pa. 515, 520, 121 A.2d 459, 463 (1956)(nature of risk), *Witthoeft v. Kiskaddon,* 557 Pa. 340, 353, 733 A.2d 623, 630 (1999)(foreseeability of harm), *Cruet v. Certain-Teed Corp.,* 432 Pa.Super. 554, 558, 639 A.2d 478, 479 (1994)(relationship, nature of risk and public interest in the proposed solution). *See also Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Texas 1994)("In determining whether to impose a duty, this Court must consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury

---

9. In addition, a special relationship was not present in any of the cases cited by Pharmacists Mutual.

and the consequences of placing that burden on the actor.").

*Althaus,* 562 Pa. at 553, 756 A.2d at 1169. After applying the above factors, the court in *Althaus* concluded that the majority of these factors weighed against imposing a duty beyond that owed to a patient. *Id.* at 553-57, 756 A.2d at 1169-71.

Applying the five-factor test in *Althaus* to the facts alleged here requires the Court to reach the same conclusion. The relationship between Pharmacists Mutual and Stern Partnership is the typical, arms-length, relationship of an insurance company and insured. *See Wisniski v. Brown & Brown Ins. Co.,* 906 A.2d 571, 581 (Pa.Super.Ct. 2006). As to social utility, there is some benefit to an insurance agent who possesses a knowledge of the insurance industry providing advice regarding coverage. On the other hand, insureds can also review their coverage, inspect their own property, and reach their own conclusions regarding the type and extent of insurance coverage needed. *Id.* at 579. Moreover, the nature of the risk here is that an accident or occurrence results in damage to the insured's property for which inadequate coverage exists allegedly due to the agent's failure to advise the insured as to the appropriate amount of coverage. However, the foreseeability of this risk is questionable because it does not result from the failure to provide advice, but rather, is a consequence of the insured's decision to purchase insurance in an inadequate amount. Also, the consequence of burdening insurance agents with a duty to provide advice absent a special relationship or some affirmative action on their part would impose an onerous burden on insurers and/or their agents, which was neither mandated nor bargained for. *Id.* at 580-81. Indeed, imposing such a duty would be tantamount to turning insurers into guarantors without the concomitant renumeration from the insureds. *Id.* at 581 (citing *Farmers Ins. Co. v. McCarthy,* 871 S.W.2d 82, 86 (Mo. App. 1994)). Finally, there is no substantial public interest favoring the imposition of such a duty, for the reasons set forth in *Wisniski.* 906 A.2d at 581. Accordingly, the Court concludes that in the absence of a special relationship, or an affirmative action on the part of Pharmacists Mutual and/or Mr. Lange, the factors in *Althaus* dictate against the imposition of a duty of care against Pharmacists Mutual for failure to provide advice.

Thus, to the extent Plaintiff's negligence claim is predicated on a failure to advise/recommend coverage, *Treski* and *Kilmore*, as well as the other authority cited by Pharmacists

Mutual, support dismissal of the negligence claim. There is no general duty to provide advice absent a special relationship, and it does not appear that Stern Partnership has pled in its amended complaint facts sufficient to establish a special relationship.[10]

Nonetheless, that does not end the inquiry here. A close examination of the amended complaint in this case reveals that Stern Partnership is asserting not only that Pharmacists Mutual failed to recommend coverage or failed to advise it regarding the availability and/or extent of coverage (Am. Compl. ¶ 26, pts. a-e, g), but also, that Pharmacists Mutual, through its agent, Mr. Lange, affirmatively undertook to provide advice regarding coverage by conducting a review of its coverage, which included a visit to the Property, meeting and consulting with Louis Stern, taking measurements of the building, and recommending the amount of coverage based on his measurements and expertise in the insurance industry. (Am. Compl. ¶¶ 13-18, 26 pts. f & h.) In so doing, Plaintiff argues, Mr. Lange was required to exercise the care that a reasonably prudent business person in the insurance industry would exercise under similar circumstances.[11] Thus, Stern

---

10. A special relationship has not really been defined by the Pennsylvania courts in the context of an insurance agent's duty to the insured, but courts from other jurisdictions have offered an explanation of the nature of the special relationship in this context, which this Court finds instructive. For example, general allegations of reliance on an agent's expertise or knowledge regarding insurance coverage are insufficient to establish a special relationship. *See, e.g., Sandbulte v. Farm Bur. Mut. Ins. Co.*, 343 N.W.2d 457, 464-65 (Iowa 1984); *Bruner v. League Gen. Ins. Co.*, 416 N.W.2d 318, 321 (Mich. App. 1987). However, the courts have found a special relationship to arise when the insurance agent "holds himself or herself out as an insurance specialist, consultant, or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured." *Couch*, § 46:39 at 46-52 & n. 49 (citing *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457 (Iowa 1984)). Arguably in this case, the allegation that Mr. Lange is an insurance producer may be sufficient to establish that he is a specialist. However, notably absent from the amended complaint are any allegations or indications that Mr. Lange received compensation for any such consultation apart from the premiums paid. Thus, even construing the facts in the light most favorable to Stern Partnership, the Court finds it has failed to allege facts to show a special relationship exists here.

11. The Pennsylvania courts have enunciated the following standard of care for insurance agents: "[A] licensed insurance agent . . . [i]s required to exercise the skill and knowledge normally possessed by members of that profession and his failure to do so render[s] him liable for any loss of coverage." *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, (Pa.Super.Ct. 2003) (citing Restatement (2d) Torts § 299A (1965)); *see also Consol. Sun Ray, Inc. v. Lea*, 401 F.2d

Partnership is asserting that it has satisfied the duty element of its *prima facie* negligence claim based on its allegation that Mr. Lange affirmatively undertook to provide advice regarding the renewal policy coverage limits, and it relied on such advice in purchasing insurance coverage in the amount of $ 1,780,000. Under the liberal pleading standards of Fed.R.Civ.P. 8, the Court finds that Stern Partnership has alleged sufficient facts in support of its negligence claim to survive a motion to dismiss.

"The initial element in any negligence cause of action is the first: that the defendant owes a duty of care to the plaintiff." R.W. v. Manzek, 585 Pa. 335, 888 A.2d 740, 746 (2005) (citing *Althaus, supra*). Whether a defendant owes a duty of care to the plaintiff is a question of law reserved to the Court. *Id.* (citations omitted); *Wisniski*, 906 A.2d at 576. Even though a legal or contractual duty of care on the part of the defendant may not exist under Pennsylvania law, the court may nonetheless impose liability on a defendant who assumes a duty of care by his affirmative actions. *See Feld v. Merriam*, 506 Pa. 383, 392, 485 A.2d 742, 746 (1984) (noting that an exception exists to the general rule precluding the imposition of liability in the absence of a preexisting duty "where a party assumes a duty, whether gratuitously or for consideration, and so negligently performs that duty that another suffers damage") (citing *Pascarella v. Kelley*, 378 Pa. 18, 105 A.2d 70 (1954); *Rehder v. Miller*, 35 Pa. Super. 344 (1908)). The exception noted by the Pennsylvania Supreme Court in *Feld* is predicated on the Restatement (2d) Torts § 323 (1965), which has been adopted as an accurate statement of the law in Pennsylvania and provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Feld*, 506 Pa. at 392-93, 485 A.2d at 746 (citing *Gradel v. Inouye*, 491 Pa. 534, 421 A.2d 674

---

650, 656 (3d Cir. 1968) (applying Pennsylvania law).

(1980); *DeJesus v. Liberty Mut. Ins. Co.*, 423 Pa. 198, 223 A.2d 849 (1966)). A plaintiff will satisfy its burden under Section 323 if it proves one of the two elements–either increased risk of harm or detrimental reliance. *Feld*, 506 Pa. at 393 n.4, 485 A.2d at 746 n. 4 (citations omitted); *see also Evans v. Liberty Mut. Ins. Co.*, 398 F.2d 665, 667 (3d Cir. 1968) (applying Pennsylvania law).

Although the Pennsylvania Supreme Court has recognized the exception as stated in Section 323 of the Restatement, it has applied Section 323 narrowly. *Feld*, 506 Pa. at 394, 485 A.2d at 747; *see also Morena v. South Hills Health Sys.*, 501 Pa. 634, 642-44, 462 A.2d 680, 68 (1983) (limiting the extent of defendant-paramedics duty under Section 323 to the scope of their undertaking).[12] For example, the court in *Feld* held that a landlord could be held liable for providing inadequate security in an apartment complex but only for his negligent failure to provide the degree of security that he undertook to provide. *Feld*, 506 Pa. at 394, 485 A.2d at 747. The plaintiffs in that case sustained

---

12. The Court takes note of the Pennsylvania Supreme Court's statement in *Morena* to the effect that Section 323 cannot be used to create a duty where one does not exist. 501 Pa. at 642, 462 A.2d at 684. At first blush, this statement appears to be in conflict with the court's adoption of Section 323 to impose a duty. *Morena* was decided one year prior to *Feld*; curiously, however, no mention of this statement is made in *Feld*. This inconsistency is best explained by one legal commentator:

> Taken at face value, this [statement] would seem to render § 323 and § 324A meaningless, because those sections are clearly meant to encompass situations where a defendant who might otherwise not have any obligation to the plaintiff, undertakes an obligation through his conduct. One possible interpretation of this language is that the courts reserve the right to find no liability as a matter of law, regardless of the defendant's undertaking. However, in those cases in which the [Pennsylvania] Supreme Court has raised the concept, its point appeared to be that it is the conduct of the defendant alone which defines the scope of the undertaking, and unless the facts support that a duty was undertaken, no liability can attach. In short, § 323 burdens the defendant only with the obligations actually undertaken; it does not by operation of law create additional obligations beyond those that the defendant contemplated. . . . This point was underscored in *Feld*.

3 West's Pa. Pract., Torts: Law and Advocacy § 1.16 (2006). This Court agrees and finds that the Pennsylvania Supreme Court meant that under Section 323, a defendant can only be burdened with the obligations actually undertaken, otherwise the court's adoption of Section 323 would be rendered meaningless.

10

serious injuries in a felonious assault in the parking area, but were prohibited from arguing that the security measures voluntarily provided by the landlord were inadequate because their expected benefits from the security program were unreasonable.

Unlike the plaintiffs in *Feld* or *Morena,* Stern Partnership has set forth allegations in its amended complaint which can be construed as attempting to hold Pharmacists Mutual liable for those actions within the scope of its agent's undertakings. Stern Partnership alleges that Mr. Lange assumed a duty of care by conducting a review, inspecting the property, taking measurements, calculating the amount of coverage needed based on the measurements, and recommending an amount of coverage based on those measurements. The amended complaint further alleges that Stern Partnership relied on Mr. Lange's actions in choosing the amount of coverage to purchase, which resulted in the property being substantially underinsured. Thus, under the liberal pleading standards of Fed.R.Civ.P. 8, the Court finds that Stern Partnership has alleged sufficient facts in support of its negligence claim based on the Restatement (2d) Torts § 323 to survive a motion to dismiss.

Accordingly, for the reasons set forth above, the Court will deny Defendant's Motion to Dismiss Plaintiff's negligence claim set forth in Count I of the Amended Complaint.

**B. Negligence Misrepresentation Claim - Count II**

In *Bilt-Rite Contractors, Inc. v. Architectural Studio,* 581 Pa. 454, 482, 866 A.2d 270, 287 (2005), the Pennsylvania Supreme Court officially adopted the Restatement (2d) Torts, § 552 (1965), which sets forth the elements of a cause of action for negligent misrepresentation.[13] Section 552 of

---

13. In adopting Section 552 of the Restatement in cases where information is negligently supplied by one in the business of supplying information, the court in *Bilt-Rite* emphasized that it was not supplanting the common law tort of negligent misrepresentation. 581 Pa. at 482, 866 A.2d at 287. Rather, the court stated it was clarifying the contours of the tort of negligent misrepresentation as it relates to those in the business of providing information to others. *Id.* Under Pennsylvania common law, a plaintiff must prove the following elements to establish a claim for negligent misrepresentation:
    (1) a misrepresentation of a material fact;
    (2) made under circumstances in which the misrepresenter ought to have known its falsity;
    (3) with an intent to induce another to act on it; and
    (4) which results in injury to a party acting in justifiable reliance on

11

the Restatement provides in relevant part:

> One who in the course of his business or profession supplied information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if
> (a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and
> (b) the harm is suffered
>   (i) by the person or one of the class of persons for whose guidance the information was supplied; and
>   (ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct . . . .

Restatement (2d) Torts § 552 (1965). In the case at bar, the Court finds that Stern Partnership has alleged sufficient facts to establish a claim for negligent misrepresentation at this juncture. (*See* Am. Compl. ¶¶ 31-36.) Indeed, Pharmacists Mutual does not appear to suggest otherwise in its brief in support of its motion to dismiss. Accordingly, the Court will also deny the motion to dismiss with regard to the negligent misrepresentation claim filed by Pharmacists Mutual.

## IV.  CONCLUSION

For the reasons set forth above, the Plaintiff has alleged sufficient facts to state a claim for negligence and negligent misrepresentation to withstand a motion to dismiss. Therefore, the Court will deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint. An Order consistent with this opinion will follow.

Dated: March 27th, 2007

_____
DAVID STEWARD CERCONE
United States District Judge

---

the misrepresentation.
*Bilt-Rite*, 581 Pa. at 466, 866 A.2d at 277 (citing *Gibbs v. Ernst*, 538 Pa. 193, 219, 647 A.2d 882, 890 (1994) (citing Restatement (2d) Torts, § 552)).

cc:   Gary M. Davis
      428 Forbes Avenue
      1700 Lawyers Building
      Pittsburgh, PA 15219